Ruffin, C. J.
 

 The opinion of the Court is clear, that there was no such possession of the son, while he continued to live with his father, as could constitute a good gift of the slave, as an advancement under the statute. An actual delivery and visible change of possession are indispensable to constitute a valid parol gift. This point was so fully investigated in
 
 Adams
 
 v.
 
 Hayes, 2
 
 Ire. 361, that it is only requisite to refer to that case as settling it. The Court holds, however, that the gift of the negro became complete, for the purposes of the question before us, when the son left the father and actually took the negro with him. That was a visible change of possession upon an actual, though imperfect, gift by the father; and the negro would, unquestionably, have been an advancement, as of that period, under the proviso in the act of 1806, had the son not sold the negro, but retained him in
 
 *150
 
 his own possession, until the death of the father intestate..
 
 Stallings v. Stallings,
 
 1 Dev. Eq. 298;
 
 Hinton
 
 v. Hinton, 1 Dev. & Bat. Eq. 587. It seems to the Court, that to this purpose the possession of the son’s alienee is that of the son himself. The substance of the proviso is, that when, a gift of a slave is made by a parent, either expressly or by implication, and the parent actually parts from the possession to the child and never again takes it, but dies without otherwise disposing of the property by any act
 
 inter vivos,
 
 or by making a will, the gift thereby become® complete
 
 ab initio,
 
 so as to amount to an advancement from that period. That is the effect of what was said upon the construction of the act in the cases just cited and' in that of
 
 Cowan
 
 v.
 
 Tucker,
 
 5 Ire. 78, and 8 Ire. 426; in which the Judges use the expression, that the parent died “without having resumed the possession,” and the like; as equivalent to that in the statute of the slave’s “remaining in the possession” of the child. Several cases may readily be put, which show that such must be the sense of the act. Suppose, for example, that a parent gives six slaves to a child by parol; if they all live and remain with the «Child until the parent die intestate, the case is within the words of the act, and the slaves constitute an advancement from the time of the gift, and the issue of the slaves are deemed to have been the child’s. But, if one of the six die before the parent, could it be doubted, that the child would, nevertheless, have to account for that one as a part of his advancement ? Plainly, he ought; for the gift was of the whole at once, as one advancement, and the child could not keep the other five and their increase, at the original value of the five, and throw the loss of the death of one on the parent. Nay, suppose such a gift of a young female slave, who afterwards has a numerous progeny and dies before the donor: the accident of such death can not alter the right to the issue, nor change the period to which the advancement is to be re»
 
 *151
 
 ferred. For, if she had lived longer than the donor, she would have been, alone, the advancement, and no notice would be taken of the children, which would be regarded as belonging to the child as they came
 
 in esse,
 
 as incident to the child’s title to the mother. Surety the legislature could not mean, that the death of the woman should make her cease to be an advancement, and, further, convert the issue into several substantive advancements. At what periods would they be advancements ? They were never "put by the parent into the possession of the child;” and the child would not have a title to them at all, or would derive it through that to the mother, and, consequently, the mother was the subject of the advancement, though dead at the period when the child’s title first became irrevocable and complete. Again, if the child die before the parent and the slaves be taken by the child’s executor or administrator, and applied in a course of administration, or held as a part of the estate until the parent’s death, it seems plain that the slave would still be an advancement to the child as of the time of the original gift; for, the case would not be within the mischiefs against which the act is directed, and if the gift were not effectual, the unquestionable purpose of the parent, and expectation of the son and his creditors and family, wpuld be defeated. So, if there be grand-father, father, and son, and the grand-father make a parol gift to the father of slaves, and the father makes a like gift to his son of some of the slaves, and then dies intestate. Now, in such a case, it may be admitted, that the grandfather could annul his gift and take back the negroes: yet, if he did not, it could not have been the intention of the legislature, that his gift should be annulled, as a matter of law simply, since it is plain, that, as between the father and his son, the portion given to the son was an advancement, and the very purpose of the grand-father in making his gift originally was to enable his son to pro
 
 *152
 
 vide for his family. The possession of the grand-son in such a case must be deemed that of his father, being under him, within the meaning of the legislature. Again, if the fact of the possession not remaining with the child at the death of the parent, by reason of the prior death of the slave, vvere to defeat the operation of the proviso, it would produce manifest and gross injustice in many oases ; as, for example, by making the child account for hires or profits while he had the possession, though the parties contemplated no such thing. The case of a sale by the child, not invalidated by an objection of the parent stands upon the same reason with the cases just put.— The possession of the vendee is the sam.e as that of his vendor, and, instead of impeaching, completes the advancement. This sale is called that of the son. since the case is understood so to mean. It might be very different if the son did not profess to own the slave and not to sell him as his. but only under the authority of the father, and to ask for t.he assent of the father as necessary to the validity of the sale. Then, indeed, it would be substantially the sale of the father, and his gift, that of the money, and not of the slave. But here the saléis stated to be that of the son, and, of course, as upon his own title ; and the assent of the father is to be understood as rather evidence of his approbation of the son’s sale, and not importing that he. the father, made it or joined in it. The Court therefore holds, that, in this case, the advancement is to be estimated, as of the day the negro was exclusively in his son’s possession : that is. when he left his father’s and took the negro with him ; which may be more or less than the price of $700, subsequently received for him — ■ for the case agreed does not state the length of time between those events, nor the value at the former one. Of course, the son is not liable for hires or profits after he had such exclusive possession, as the negro is then taken to be his. Whether the sums given him by his father,
 
 *153
 
 while living with him, are advancements or not, the case does not furnish facts to enable the Court to say. For, it does not appear, what was the amount of those sums, nor for what purpose they were given. It may be possible they were advancements ; though it is not very probable, we conjecture. Small sums of money given by a father to a son in his minority, who is living with him, to supply him with clothing or to defray the expenses of the ordinary pleasures and amusements of youth in their rank of life, are not deemed advancements ; and the rule would not be varied by the circumstance, that the father derived the money from any particular source. We suppose it most probable that such was the nature of this case ; and, if so, the opinion of the Court would be that sums given for such purposes, though spoken of as the profits of the negro, would not be advancements ; for, advancements are understood to be gifts of money or personal property for the preferment and settling of a child in life, and not such as are mere presents of small value or such as are required for the maintenance or education of the child, which thelawthrows on a father, at all events. Not knowing the facts, however, with precision, the Court cannot determine that point definitely. The decree must therefore be reversed — each party paying their costs in this Court; and the cause must be remanded and this opinion certified to the Superior Court, in order that the decree may be there varied accordingly, and farther proceedings taken in the case.
 

 Per Curiam. Ordered accordingly.